Adam J. Zapala (SBN 245748)
Joyce Chang (SBN 300780)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California  94010
Telephone:    (650) 697-6000
Facsimile:     (650) 692-3606
azapala@cpmlegal.com
jchang@cpmlegal.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL SLANE<br><br>             Plaintiff,<br><br>      v.<br><br>BLOOMBERG INC., BLOOMBERG L.P., d/b/a BLOOMBERG MEDIA<br><br>             Defendants. | Case No. _____<br><br>**COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. JURISDICTION AND VENUE ............................................................................................3

III. INTRADISTRICT ASSIGNMENT .......................................................................................3

IV. PARTIES ................................................................................................................................3

V. FACTUAL ALLEGATIONS .................................................................................................4

    A. Plaintiff Slane's Initial Employment at Bloomberg Radio .......................................4

    B. Defendants' Failure to Provide Regular Performance Evaluations and Goals ............................................................................................................................5

    C. Defendants' Unfair Treatment of Plaintiff Slane........................................................5

    D. Plaintiff Slane's Whistleblowing Conduct.................................................................6

    E. Plaintiff Slane's Termination Was Motivated by her Gender and Whistleblowing ..........................................................................................................7

VI. CONDITIONS PRECEDENT TO FILING ACTION ..........................................................8

VII. CAUSES OF ACTION ..........................................................................................................8

FIRST CAUSE OF ACTION
(Gender Discrimination in Compensation under Cal. Gov. Code §12940(a)) ..............................8

    A. Bloomberg Radio discriminated against Plaintiff Slane ...........................................8

    B. Plaintiff Slane's gender was a substantial motivating reason for this disparity in compensation ...........................................................................................9

    C. Plaintiff Slane's lower compensation was a substantial factor in causing her harm ......................................................................................................................9

SECOND CAUSE OF ACTION
(Unlawful Termination Based On Gender under Cal. Gov. Code §12940(a)) ..............................9

    A. Defendants Unlawfully Terminated Plaintiff Slane.................................................10

    B. Plaintiff Slane's gender was a substantial motivating reason for her termination ...............................................................................................................10

    C. Plaintiff Slane's unlawful termination was a substantial factor in causing her harm ....................................................................................................................11

THIRD CAUSE OF ACTION
(Violations of Whistleblower Protection Laws, Cal. Lab. Code §1102.5(b)) .............................11

FOURTH CAUSE OF ACTION
(Termination in Violation of Public Policy) ............................................................................... 12

VIII.   PRAYER FOR RELIEF ........................................................................................................ 12

DEMAND FOR JURY TRIAL ........................................................................................................ 14

Plaintiff alleges as follows:

## I. INTRODUCTION

1. Plaintiff Cheryl Slane brings this action against Defendants Bloomberg Inc., and Bloomberg L.P., doing business as Bloomberg Media (collectively referred to herein as "Defendants") for unequal pay, gender discrimination, termination in violation of Cal. Labor Code § 1102.5, and unlawful termination in violation of public policy. Plaintiff Slane brings this lawsuit under Cal. Gov. Code. §12940(a) for gender discrimination in compensation; under Cal. Gov. Code §12940(a) for unlawful termination based on gender; Cal. Lab. Code §1102.5(b) for a retaliatory discharge for whistleblowing activity, and for a termination in violation of public policy under *Tameny v. Atlantic Ridgeway*.

2. Plaintiff Slane worked for Bloomberg Radio—a business unit of Defendants'. Plaintiff Slane was hired in January 2015 as a Senior Account Manager by Mr. Merrick Musolf, an executive who was the Group Advertising Director responsible for overseeing multimedia sales for the San Francisco and West Coast territories for Defendants' digital, mobile, print, television and radio businesses. Plaintiff Slane was hired to sell advertising space to potential advertisers on Defendants' radio programs.

3. Plaintiff Slane had a wealth of experience selling advertising to media companies and other potential advertisers. Plaintiff Slane previously worked in the San Francisco region, selling advertising to a number of potential clients. She had deep experience with and connections to local businesses and potential advertisers. Defendants hired Plaintiff specifically for her local industry connections. Throughout the time of her employment with Defendants, Plaintiff Slane used her connections and industry knowledge to secure coveted clients and trade deals with other potential customers, such as BART.

4. At the same time that Plaintiff Slane was hired, Defendants also hired another comparable male colleague to perform substantially similar duties – sell advertising space for Defendants' unit, Bloomberg Radio. Yet, throughout her employment with Defendants, Plaintiff Slane was paid substantially less than her comparable male colleague in base salary; and substantially less than her comparable male colleague in potential bonus compensation. Plaintiff

Slane's starting salary was $120,000 per year, with a potential bonus of $50,000. The comparable male colleague performing substantially similar duties received a salary of $150,000 per year, with a potential bonus of $80,000 per year.

5. Throughout her tenure at Bloomberg, Plaintiff Slane receives less compensation and fewer resources than her comparable male colleague, despite having substantially similar job tasks. Plaintiff Slane could earn her potential $30,000 bonus if she met as sales goal of $275,000, while the comparable male colleague could earn his potential $80,000 bonus for meeting a sales goal of $450,000. But Plaintiff Slane was also assigned radically fewer preexisting accounts than her comparable male colleague. Plaintiff Slane was only assigned a single, pre-existing account worth $30,000, which required her to bring in an additional $245,000 to meet her sales goal. Plaintiff Slane's comparable male colleague was assigned $400,000 worth of preexisting accounts, which only required him to bring in a paltry $50,000 to meet his sales goals and obtain his larger bonus.

6. In addition to the preexisting accounts that Mr. Musolf favorably assigned to the comparable male colleague, he also assigned him to a substantially more lucrative geographic area. Plaintiff Slane's comparable male colleague was assigned to the Los Angeles market, where the vast majority of the radio advertising buyers are located. By contrast, Plaintiff Slane was assigned to Portland and Seattle, a region that Bloomberg management even acknowledged had few, if any, radio advertising agencies. These differences in key terms and conditions of employment were based on Plaintiff Slane's gender. Throughout her employment, Mr. Musolf, Plaintiff Slane's supervisor, demonstrated his gender-based preference for males in sales positions.

7. Additionally, Mr. Musolf failed to acknowledge the many contributions that Plaintiff Slane made to Bloomberg. For example, Mr. Musolf repeatedly refused to award her credit for sales that she contributed to despite being against company policy. He also failed to acknowledge the trade deals executed by Plaintiff Slane and he excluded her from the sales meetings.

**COMPLAINT** 2

8. Despite the barriers needlessly erected by Mr. Musolf, Plaintiff Slane was well on her way to meeting her sales goals. At the time she was terminated, she was 40% through with her sales goals and had five months to complete the remaining portion. Due to Mr. Musolf's delay in providing the sales goals and his unwillingness to acknowledge many contributions that Plaintiff Slane did make, Plaintiff Slane achieved more than 40% in only 18 weeks.

9. Shortly before her termination, Plaintiff Slane expressed concern to Mr. Musolf that Bloomberg was engaged in fraud by falsely quoting national listenership numbers and metrics to their potential clients, despite Bloomberg's operation being extremely new on the West Coast. The metrics Mr. Musolf and Bloomberg provided to potential clients were not metrics from the West Coast, but were instead metrics used for Bloomberg Radio on the East Coast. Plaintiff Slane believed it was misleading to potential clients to quote those numbers and metrics.

10. Despite Mr. Musolf's past pattern and practice of unfair treatment towards Plaintiff Slane, their relationship noticeably soured after this interaction, and she was pretextually terminated shortly thereafter. Plaintiff Slane's termination was also motivated by her gender, as discussed herein.

## II.   JURISDICTION AND VENUE

11. This Court has jurisdiction over the claims raised in this complaint under 28 U.S.C. § 1332, based on diversity jurisdiction. In the case, Plaintiff Slane is a citizen of California while Defendants are citizens of New York.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## III.   INTRADISTRICT ASSIGNMENT

13. Intradistrict assignment to the San Francisco Division is appropriate. Defendants have offices in San Francisco. Plaintiff Slane's employment occurred in San Francisco and her termination and resulting injuries occurred in San Francisco.

## IV.   PARTIES

14. Plaintiff Cheryl ("Cherie") Slane was a Senior Account Manager at Bloomberg Radio, a division of Bloomberg Inc. and Bloomberg L.P., from January 2015, when Bloomberg

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**COMPLAINT**                                                                                                              3

Radio launched in San Francisco, to September 8, 2015 when she was pretextually terminated. Plaintiff Slane has been injured by Defendants' unlawful conduct.

15. Defendant Bloomberg Inc.'s resides in New York, New York and also has its principal place of business in New York, New York. Defendant Bloomberg Inc. provides business and financial information, news, and insights through the Internet. It provides online publishing and marketing services. The company provides data, news, analytics and solutions for professional, corporate and government. It mainly operates through five segments: Bloomberg Professional, Bloomberg Enterprise, Bloomberg Tradebook, Bloomberg News & Media, and Bloomberg Business. Bloomberg Inc. conducts substantial business, and has substantial contacts, in and throughout California.

16. Defendant Bloomberg L.P. resides in New York, New York, and also has its principal place of business in New York, New York. Defendant Bloomberg L.P. is a privately held financial software, data, and media company. It provides financial software tools such as an analytics and equity trading platform, data services, and news to financial companies and organizations through the Bloomberg terminals. It also includes a wire service (Bloomberg News), a global television network (Bloomberg Television), digital websites, radio, subscription-only newsletters, and three magazines: *Bloomberg Businessweek*, *Bloomberg Markets*, and *Bloomberg Pursuit*. Bloomberg Radio is a division of Bloomberg Media and offers a regular schedule of daily and weekly general and business news programming. Bloomberg Media, in turn, is a division of Bloomberg L.P. Bloomberg L.P. conducts substantial business, and has substantial contacts, in and throughout California.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff Slane's Initial Employment at Bloomberg Radio

17. Plaintiff Slane was hired as a Senior Account Manager in January 2015, when Bloomberg Radio launched in San Francisco. Her job was to sell advertising space to clients that wished to advertise on Bloomberg Radio. She was hired for her wealth of experience selling advertising and her deep roots and connections in the Bay Area.

18. Plaintiff Slane was hired by and reported to Mr. Merrick Musolf.

19. Plaintiff Slane started on the same day as a comparable male colleague. The comparable male colleague's title was also "Senior Account Manager", and he also reported to Mr. Musolf.

20. Despite having the same job duties and titles, the comparable male colleague entered with a higher base salary than Plaintiff Slane. Plaintiff Slane made $120,000/year, with a possible $50,000 bonus for meeting a $275,000 sales goal. The comparable male colleague received $150,000 per year and an $80,000 bonus for meeting a $450,000 sales goal.

21. More alarming than the pay disparity, Mr. Musolf assigned Plaintiff Slane only $30,000 worth of preexisting accounts, requiring her to bring in an additional $245,000 in sales to meet her sales goal. By contrast, Mr. Musolf assigned Mr. Patterson $400,000 in preexisting accounts, requiring him to bring in only $50,000 to meet his sales goal and obtain a larger bonus.

### B.  Defendants' Failure to Provide Regular Performance Evaluations and Goals

22. After her hiring, Mr. Musolf did not provide Plaintiff Slane with sales categories and goals until six weeks after she was hired, effectively abbreviating the time she had to meet her sales goals.

23. Defendants also failed to provide regular, periodic performance evaluations so that employees could effectively evaluate their own performance.

### C.  Defendants' Unfair Treatment of Plaintiff Slane

24. As noted, in addition to the preexisting accounts that were favorably assigned, Plaintiff Slane's comparable male colleague was assigned a substantially more lucrative geographic area. Mr. Musolf assigned him to the Los Angeles market, where the vast majority of the radio buyers are located. By contrast, Mr. Musolf assigned Plaintiff Slane to Portland and Seattle, a region which Bloomberg management even acknowledged has no radio advertising agencies.

25. Further, Mr. Musolf failed to acknowledge and credit sales wins by Plaintiff Slane. Plaintiff Slane had a preexisting relationship with First Republic Bank. She assisted in bringing in this $30,000-$50,000 account. Mr. Musolf instead assigned that account to a male counterpart,

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**COMPLAINT**                                              5

1  Rich Fimbres, in Los Angeles and refused to provide split credit to Plaintiff Slane, as was
2  company policy and practice.
3      26.     Plaintiff Slane pursued First Republic as a client because she was informed by
4  management in New York that securing the account would be a major victory.  Mr. Siegel and
5  Mr. Mayers, both from Bloomberg New York management, repeatedly praised Plaintiff Slane for
6  making this sale.
7      27.     Despite Bloomberg's policy that such a sale should be "split"—given that First
8  Republic's advertising agency resided in Los Angeles—Mr. Musolf did not split the account for
9  Plaintiff Slane.  Indeed, when Plaintiff Slane spoke to Mr. Musolf about it one afternoon, he acted
10 erratic, smelled of alcohol, and rejected her requests.  Mr. Musolf also refused to acknowledge
11 Plaintiff Slane securing a $120,000 advertising trade deal between BART and Bloomberg Radio.
12 Further, Mr. Musolf frequently excluded Plaintiff Slane from marketing meetings he conducted
13 with her comparable male colleague, the only other Senior Account Manager at Bloomberg Radio
14 at the time.  Plaintiff Slane's exclusion from such meetings is all the more curious considering
15 that Mr. Siegel and Mr. Mayer, of Bloomberg's New York management, requested that Plaintiff
16 Slane assist in marketing Bloomberg Radio though her local contacts, such as through the
17 previous $120,000 advertising trade deal between BART and Bloomberg Radio.
18      **D.     Plaintiff Slane's Whistleblowing Conduct**
19      28.     During her time at Bloomberg, Plaintiff Slane was constantly under pressure to sell
20 advertising space at all costs.  To this end, when Bloomberg Radio sold advertising time to local
21 advertisers, they misleadingly quoted national listenership metrics and demographics to potential
22 clients.
23      29.     As Bloomberg Radio was extremely new on the West Coast, these numbers did not
24 accurately represent what their clients were purchasing.
25      30.     Because of this misleading practice, shortly before she was terminated, Plaintiff
26 Slane expressed discomfort to Mr. Musolf about engaging in fraud and misleading advertising by
27 providing national metrics to local clients.  Mr. Musolf dismissed her concerns and implored her
28 to sell advertising space at all costs.

31. Additionally, despite Mr. Musolf's past pattern and practice of unfair treatment towards Plaintiff Slane, their relationship noticeably soured after this interaction, and she was terminated shortly thereafter.

### E. Plaintiff Slane's Termination Was Motivated by her Gender and Whistleblowing

32. Plaintiff Slane was terminated on September 8, 2015. She was given no warning and was never issued a Performance Improvement Plan.

33. Bloomberg provided a pretextual reason for Plaintiff Slane's termination. Bloomberg claimed that it terminated Plaintiff Slane because she was not sufficiently close to her sales goals of $245,000 for the year.

34. Despite Bloomberg's reasoning, Plaintiff Slane was in fact 40% of the way towards her sales goal and had five months—until February 2016—to complete the remaining portion. She had made this level of progress despite Mr. Musolf impeding her progress. Because Mr. Musolf delayed providing Plaintiff Slane with her sales categories and goals until six weeks after she was hired, and because so many of her sales went unaccounted, she effectively made a greater percentage of her sales goal in only 18 weeks.

35. Mr. Musolf's conduct also demonstrates that Plaintiff Slane's termination was pretextual and motivated by her gender and whistleblowing conduct. Mr. Musolf had a pattern and practice of treating Plaintiff Slane differently than similarly situated male colleagues. For example, Plaintiff Slane's comparable sales colleague made **no** additional advertising sales during the same period of time. And, on information and belief, the comparable male colleague had accounted for a similar percentage of sales as compared to his sales goal at the same juncture in the year. Plaintiff Slane's comparable male colleague was not terminated.

36. Despite Defendants purportedly terminating Plaintiff Slane for failure to make sufficient progress on her sales goal and poor performance, subsequent to her termination, Mr. Musolf began to recommend Plaintiff Slane to recruiters. Indeed, he claimed to one recruiter that Plaintiff Slane was "excellent." If Plaintiff Slane was actually fired for poor performance, it

1  defies belief that he would represent to colleagues in the same profession that Plaintiff Slane was
2  "excellent."

3      37.    Finally, Plaintiff Slane was terminated in close temporal proximity to her reporting
4  the misrepresentations in Bloomberg's sales pitches to Mr. Musolf.

## VI. CONDITIONS PRECEDENT TO FILING ACTION

38. Plaintiff Slane has complied with all required conditions precedent prior to filing this action.

39. Plaintiff has complied with any pre-lawsuit filing requirements, including, but not limited to, receiving a right to sue letter from the Department of Fair Housing and Employment ("DFEH") for the claims covered by this lawsuit.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Gender Discrimination in Compensation under Cal. Gov. Code §12940(a))**

40. Plaintiff incorporates herein by reference and realleges each of the allegations stated in this complaint as though fully set forth herein.

41. Cal. Gov. Code §12940 protects employees from discrimination in compensation because of gender. As alleged herein, Plaintiff Slane was compensated at a substantially lower level than a comparable male colleague and her gender was a substantial motivating reason for this disparity in compensation. This disparity was a substantial factor in causing harm to Plaintiff Slane.

    **A.**    **Bloomberg Radio discriminated against Plaintiff Slane**

42. At all relevant times, Defendants were employers covered by California's Fair Employment and Housing Act, and Plaintiff Slane was a covered employee.

43. At all relevant times, Defendants compensated Plaintiff Slane at a lower level than her comparable male colleague. Though they were hired with similar levels of experience, for the same job, at the same time, with the same job title, Plaintiff Slane's comparable male colleague earned substantially more than she did.

44. This colleague was also awarded significantly more preexisting accounts than Plaintiff Slane. Indeed, he was only required to bring in an additional $50,000 worth of sales to meet his sales goals, whereas Plaintiff Slane was required to bring in an additional $245,000 in sales to meet her sales goals and only earn a $50,000 bonus.

### B. **Plaintiff Slane's gender was a substantial motivating reason for this disparity in compensation**

45. Plaintiff Slane's gender was a substantial motivating reason for the disparate treatment. Given their similar experience, job duties and titles, the difference in compensation cannot be explained by any other, nondiscriminatory, legitimate reason.

46. Furthermore, Plaintiff Slane's supervisor at Bloomberg, Mr. Musolf, has a prior history of unequal treatment of women, creating a strong inference that gender was also a substantial motivating reason in this case.

### C. **Plaintiff Slane's lower compensation was a substantial factor in causing her harm**

47. Plaintiff Slane's disparate treatment and lower compensation caused her economic and emotional harm. Though she and a comparable male colleague had equivalent levels of experience, and, indeed, the same job title, she received a lower salary for doing the same work.

48. Despite her lower salary, as alleged *supra*, Plaintiff Slane performed at the same or higher level than her comparable male colleague.

## SECOND CAUSE OF ACTION

**(Unlawful Termination Based On Gender under Cal. Gov. Code §12940(a))**

49. Plaintiff incorporates herein by reference and realleges each and every allegation in this complaint as though fully set forth herein.

50. Cal. Gov. Code §12940 protects employees from termination because of gender. As alleged herein, Plaintiff Slane was terminated from her job as a Senior Account Manager and her gender was a substantial motivating reason for her termination. This termination was a substantial factor in causing harm to Plaintiff Slane.

### A.     Defendants Unlawfully Terminated Plaintiff Slane

51. On September 8, 2015, Defendants terminated Plaintiff Slane for purportedly failing to make "sufficient" progress towards her sales goal. Her actual job performance, as well as the behavior of her supervisor, however, demonstrates that this claim was merely a pretext for a gender-based dismissal. Plaintiff Slane had made more progress towards meeting her sales goal than a similarly situated male colleague, who had not made any additional sales during the relevant period. By contrast, Plaintiff Slane had secured the "major victory" of the First Republic account, as well as the highly beneficial trade partnership between BART and Bloomberg Radio.

52. Similarly, in addition to simply making more sales than her colleague, Plaintiff Slane did so from a significantly weaker position. Additionally, Plaintiff Slane was frequently excluded from marketing meetings between her male colleague, the only other Senior Account Manager and Mr. Musolf.

53. However, despite these substantial obstacles, Plaintiff Slane was well on her way to meeting her sales goals for the year. At the time she was terminated, Plaintiff Slane was at 40% of her sales goal and had five months—until February 2016—to complete the remaining portion. Importantly, because Mr. Musolf delayed providing Plaintiff Slane with her sales categories and goals until six weeks after she was hired, and because so many of her sales went unaccounted, she effectively made a greater percentage of her sales goal in only 18 weeks.

### B.     Plaintiff Slane's gender was a substantial motivating reason for her termination

54. Plaintiff Slane's gender was a substantial motivating reason for her termination. She was treated differently than her similarly situated male colleague, who had similar sales as Plaintiff, yet the similarly situated male was not terminated for performance.

55. For example, as alleged *supra*, Plaintiff Slane made strategically important and lucrative sales in her time as a Senior Account Manager, and had made significant progress towards her goals with new sales. Bloomberg management in New York described her securing the First Republic account as a "major victory," and praised her $120,000 advertising trade deal

1   between BART and Bloomberg Radio. Additionally, she was well on track to meet her goals by
2   February 2016, the actual deadline.

3       56.     By contrast, Plaintiff Slane's male colleague had, at the time she was terminated,
4   not made any new sales. Indeed, all of his progress towards his sales goal was based on the
5   preexisting accounts that were preferentially assigned to him.

    **C.**     <u>**Plaintiff Slane's unlawful termination was a substantial factor in causing her harm**</u>

8       57.     As alleged *supra*, Plaintiff Slane was terminated on September 8, 2015 because of
9   her gender, despite pretextual, false, performance-based claims.

10       58.     Plaintiff Slane's termination caused her economic and emotional harm. Plaintiff
11   Slane was terminated from a job at which she, by all accounts, performed well at, and at which
12   she was well on track to meet her sales goals and earn her bonus. Her unlawful termination was a
13   substantial factor in causing this economic and dignitary harm.

### THIRD CAUSE OF ACTION

### (Violations of Whistleblower Protection Laws, Cal. Lab. Code §1102.5(b))

16       59.     Plaintiff incorporates herein by reference and realleges each and every allegation
17   in this complaint as though fully set forth herein.

18       60.     California Labor Code §1102.5(b) prohibits an employer or person from retaliating
19   against an employee for disclosing to a person with authority over the employee or another
20   employee who has authority to investigate, discover, or correct the violation or noncompliance,
21   information the employee reasonable believes discloses a violation or noncompliance with a local,
22   state, or federal statute, rule, or regulation.

23       61.     Defendants violated Cal. Lab. Code §1102.5(b) by retaliating against Plaintiff
24   Slane for disclosing what she reasonable believed to be a violation of state and federal law.
25   Plaintiff Slane reasonably believed Defendants were engaged in fraud and deceptive advertising
26   by using listenership metrics and other information that was not a true reflection of Bloomberg
27   Radio's West Coast operation.

62. At all times relevant to this complaint, Defendants were Plaintiff Slane's employer for the purposes of Cal. Lab. Code §1102.5(b).

63. Plaintiff Slane disclosed information to her immediate supervisor, Mr. Musolf, who had authority over her, indicating that Bloomberg Radio's sales practices misled potential customers about the reach of Bloomberg's products.

64. Plaintiff Slane reasonably believed that she was disclosing a violation of the law when she disclosed this information to Mr. Musolf. Shortly thereafter, Bloomberg terminated Plaintiff Slane from her position as a Senior Account Manager.

65. Plaintiff Slane's disclosure of these violations of the law and unethical conduct was a contributing factor in Bloomberg Radio's decision to terminate her. The close temporal proximity between her whistleblowing conduct and the termination creates an inference of retaliation by itself.

## FOURTH CAUSE OF ACTION

### (Termination in Violation of Public Policy)

66. Plaintiff incorporates herein by reference and realleges each and every allegation stated in this complaint as though fully set forth herein.

67. Under *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980), it is unlawful for an employer to discharge an employee for reasons that violate public policy. In this case, Defendants' conduct violates public policy by terminating Plaintiff Slane because of her gender and because she engaged in protected whistleblowing conduct.

68. At all times relevant to this complaint, Defendants were Plaintiff Slane's employer for purposes of *Tameny*.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment in its favor and against Defendants as follows:

1. For damages, and all other appropriate legal and equitable relief;
2. For back pay, front pay, compensatory damages, damages for infliction of emotional distress, and punitive damages;
3. For reasonable attorneys' fees and costs;

4. For appropriate injunctive and declaratory relief;

5. For costs of suit herein; and

6. For such further relief as the Court may deem just and proper.

Dated: May 5, 2016    **COTCHETT, PITRE & McCARTHY, LLP**

By:   /s/ Adam J. Zapala
      ADAM J. ZAPALA
      *Attorney for Plaintiff Cheryl Slane*

**COMPLAINT**  13

## **DEMAND FOR JURY TRIAL**

Plaintiff Cheryl Slane demands a jury trial on all issues so triable.

Dated: May 5, 2016        **COTCHETT, PITRE & McCARTHY, LLP**

By:    /s/ Adam J. Zapala
          ADAM J. ZAPALA
          *Attorney for Cheryl Slane*